UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEONARD I. HOWARD )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ADRIAN M. FENTY, MAYOR FOR )<br>THE DISTRICT OF COLUMBIA, )<br>ET. Al.,) )<br>)<br>Defendants ) | Civil Action No. 07-1291 (CKK) |

PLAINTIFF'S RESPONSE TO DISPOSITIVE MOTIONS
TO JUDGE COLLEEN KOLLAR-KOTELLY ORDER (November 19,
2007) AND RESPONSE TO DEFENDANT'S MOTION TO DISMISS

1. Plaintiff's claim of age, race and gender discrimination under Title VII of the Civil Rights Act of 1984 ("Title VII"), and disability discrimination under the Americans with Disabilities Act of 1990 ("ADA") are not barred by plaintiff's failure to comply with the pre-litigation requirements set forth in said Title. The U.S. EEOC failed to conclude a finding in the charge, and not withstanding the plaintiff's compliance with pre-litigation requirements. Plaintiff relied upon the Agency's CFO to adhere to procedural steps in mediation and/or Administrative Dispute Resolution to remedy the aforementioned claim, in which it failed to do. In District of Columbia Court of Appeals, <u>Katherine T. Wallace v. Skadden, Arps, Slate, Meagher, &Flom</u> 715 A.2d 873 employee's suit, alleging that employer discriminated against her on account of her race and marital status, was not barred by doctrine of res judicata since employee fairly alleged that, even with due diligence, she could not have discovered employment discrimination when she brought her earlier suit for wrongful discharge and defamation.

**RECEIVED**

DEC 19 2007

Clerk, U.S. District and
Bankruptcy Courts

2. Plaintiff did in fact exhaust administrative remedies.
Plaintiff sought assistance from the Office of Employee Appeals, 717 14th Street, NW, 3rd Floor, Washington, DC 2005 and was told by that Office that it could not file a claim against the Chief Financial Officer (OCFO), or the Office of Personnel for the CFO, and the Office of Human Rights, located at 441 4th Street, NW, Suite 570N, Washington, DC 2001, further stated that the CFO did not have a office setup to handle such complaints, nor did the Agency have a person responsible for the execution of filing a complaint within the Agency against the CFO.

Plaintiff then initiated communication with the EEOC to make contact with the Agency's CFO for mediation. The EEOC sent the Agency's CFO correspondence and telephonically spoke with Management requesting them to respond back to them on the plaintiff's charge. No one from the Agency CFO's office ever responded. Plaintiff spoke with Federal Representative EEOC officer Janet Stump on July18, 2006 and signed written Agreement to Mediate, Charge Number 570-2006-00819; whereby it was noted that the CFO failed to respond to Plaintiff's charge and that they did not want to mediate the charge. Ms. Stump can be contacted on (202) 419-0736.

Plaintiff continued to seek guidance from the DC Office of Human Rights who told the Plaintiff that they did not have authority over the CFO to take his complaint. Furthermore, plaintiff was told that at-will employees of the District of Columbia could not file any complaints lodged against the CFO and thereafter, plaintiff proceeded to contact the Office of the Chief Financial Officer directly. The administrative process with the Agency ended up at the Federal Equal Employment Opportunity Commission because the Agency would not accept a complaint.

Thereafter, the Notice of Right to Sue was copied to Daryl Ann Miller, Associate General Counsel, DC Office of Chief Financial Office, Suite 200, 1350 Pennsylvania Avenue, NW, Washington, DC 20004. Due to the fact, that there was no EEO office established or anyone available inside the Agency under the CFO or the Office of Human Rights to file a complaint with, the Office of the General Counsel received plaintiff's Notice of Right to Sue.

3. Plaintiff did not fail to state a prima facie claim of discrimination under Title VIII and the ADA.

Plaintiff was discharged from employment while being out of the office on sick leave, disabled and on workman's compensation. In light of the aforementioned, the plaintiff had been rejected medical health benefits due to the erroneous and malice defamation to his character. Plaintiff's supervisors led Workman's Compensation and Disability Retirement Board to believe he did not have medical problems but rather a performance and discipline problem. See *Abdullah v. Roach*, 668 A.2d 801, 804 (D.C. 1995) states that a pleading "should not be dismissed for failure to state a claim unless it is beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief" Id. (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff and, if these allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail. *Atkins v. Industrial Telecomms. Ass'n. Inc.*, 660 A.2d 885, 887, (D.C. 1995).

Under the defamation claim, Section B. (1)(2)(3) " says a statement is defamatory if it tends to injure the plaintiff in [his] trade, profession or community standing, or lower [his] in the estimation of the community." *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990) "If it appears that the statements are at least capable of a defamatory meaning, [then] whether they were defamatory and false are questions of fact to be resolved by the jury." Id. "One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect {his} fitness for the proper conduct of {his} lawful business, trade or profession… subject to liability without proof of special harm. Restatement (Second) of Torts § 573 (1977).

Morris Winn, the former Director of Management and Administration for the CFO who oversaw the Office of Personnel corresponded to Plaintiff on several occasions and telephonically communicated with him regarding his employment status, medical/health issues. His final correspondence terminated Plaintiff's employment for reasons stating at-will clause - serving at the pleasure of, it was implied that plaintiff was terminated due to disciplinary reasons by which Personnel and the supervisors of the plaintiff falsely cohered. Plaintiff's personnel record does not reflect any discipline actions during his tenure as a career financial manager with the Department of Administrative Services, CFO Office. On the contrary, the Plaintiff has

received many awards for his innovating accounting, and management skills with the office. During the Plaintiffs medical hardships, he was denied workman's compensation and medical treatments, the loss of health insurance and other benefits due to the erroneous allegations made against him by Employer pertaining to his health, medical conditions and disabilities as well as the Plaintiff's performance and character.

Also, in *Katherine T. Wallace v. Skadden, Arps, Slate, Meagher & Flom*, arises from an action for defamation and wrongful discharge which was brought by her, a former associate of the law firm of Skadden, Arps, Slate, Meagher & Flom, against the firm and several of its partners and associates. The plaintiff alleged, inter alia, that her character and professional qualifications had been defamed by the defendants in a number of performance evaluations and other communications, and that she had subsequently been discharged, in part, in retaliation for her adherence to the Rules of Professional Conduct. The first trial judge dismissed the complaint for failure to state a claim on which relief may be granted, holding that the communications in questions were not defamatory; that even if the communications were defamatory, they were absolutely privileged because Ms. Wallace had consented to that several of the defamation counts were time-barred; and that the wrongful discharge claim was precluded by the "at-will" employment doctrine. On appeal, the plaintiff challenges all of these rulings.

Plaintiff here also challenges these rulings.

Plaintiff constantly provided medical validation, to supervisors, medical board for the Agency and personnel upon request. Even though, the Plaintiff had given evidence and provided every proof necessary to confirm illnesses and disabilities over the time span leading up until the termination, the plaintiff was terminated without being afforded any opportunity for the return back to work as a displaced employee or handicapped employee. The Agency did not allow reasonable accommodation for any of the medical requests due to his condition.

Hence, plaintiff applied for disability retirement with the Office of Personnel Management November 14, 2005 and was declined due to the faulty accusations of disciplinary and performances made against him by Employer. It was noted that the supervisor documented deficiencies in his performance and attendance that never occurred. Also, supervisor implied

disciplinary problems that never happened. These actions prevented plaintiff of successfully satisfying his medical obligations and health responsibilities because he was also denied his unemployment as well as his continuing federal benefits for physical therapy, other medical supplies and medications and insurance.

Mr. Winn, former Director of Management and Administration, also spoke with plaintiff after required to meet certain requests with respect to current medical condition and readiness to return back to work and a face-to-face meeting. Plaintiff did in fact have a face-to-face meeting with Mr. Winn, at which time thereafter, plaintiff was terminated from Agency with a banishment of permanently no return to the Agency's CFO office. Even though, plaintiff is said to be terminated because of the at-will clause, the Government of The District of Columbia, Office of the Chief Financial Officer Supervisor's Guide for Corrective and Disciplinary Actions, states very specific causes which require mandatory termination, none of which applied to plaintiff. See as follows:

- Failure to meet job requirements after being placed within an Employee Performance Improvement Period status no more than twice while employed in the same position.
- Insubordination or refusing to comply with the reasonable and proper orders of an authorized supervisor or refusing to do assigned work, including reassignment or change in duty.
- Lying to supervisors or falsifying records, including, but not limited to, official duties, work duties, time and attendance records, discipline, original application for employment, or any documents supplementing the original application.
- Threatening, fighting with, intimidating, abusing, coercing or exhibiting violent behavior toward other employees, member so the public, or officials or provoking such actions by others.
- Using official position or authority for personal profit or advantage, including accepting kickbacks.
- Absence without leave for three or more consecutive workdays.
- Misappropriation of government funds.


5. Plaintiff did in fact submit statement of claim showing that he is entitled to a relief, and simple, concise, and direct averments in his complaint.

The Plaintiff's complaint states on the last page relief that he seeks in direct averments, listing his restoration of employment in the District Government; paid back pay from the date of the infraction (termination); restoration of accrued leave had he not been wrongfully terminated; paralegal fees associated with the complaint and motion; grant the plaintiff further relief as is just and equitable.

6. The claim involving the defendants is a claim against the District of Columbia itself. However, to the extent that the defendants maybe viewed as party defendants, they should be viewed as being also sued as agents for the District of Columbia, who is liable for any violation of the ADA and Title VII.

Last, even if the defendants cannot be sued neither individual capacities, the claim should be viewed as a claim against the District of Columbia itself. See D.C. Code 1981, § 1-2502(10), under Civil Rights, Employment Practices, states where the employer is a law partnership, the phrase "any person acting in the interest of such employer; directly or indirectly," necessarily includes a partner as that phrase is used in the Human Rights Act section defining employer as any person acting in the interest of such employer, directly or indirectly.

RESPONSE TO DEFENDANTS MEMORANDUM OF POINTS AND AUTHORITIES TO ANSWER DEFENDANT'S MOTION TO DISMISS

### III. Plaintiff did not failed to file his claim with the statutorily mandated 90 days after being notified of his right to sue.

The Director Manuel Zurita, of the U.S. Equal Employment Opportunity Commission (EEOC Tampa Field Office) signed the Notice of Suit Rights on April 18, 2007. The Notice of Rights to Sue say you may file a lawsuit within 90-days of your <u>receipt</u> of notice and not the signature date of the notice, which in this case, it was received on Tuesday, April 24, 2007. Based on this receipt day it is within 90-days and preserves the plaintiff's right to sue. April 24, 2007, actually shows 87 days from the date of receipt, of the filing date (July 19, 2007). This is within the allowable 90-day period granted to plaintiff by EEOC right to sue notice. The actual 90-days doesn't start until the notice is received by the plaintiff.

The defendants are making a claim that the plaintiff filed within 92 days of his receipt of the notice, which is inaccurate, rather its shows the date the EEOC granted plaintiff permission to sue and not a receipt date by the plaintiff.

NOW COMES the plaintiff, LEONARD I. HOWARD, by and through himself, pro se, pursuant to the District of Columbia Rules of Civil Procedure, and moves the Court to allow his complaint for the following reasons:

1. Denial of plaintiff's motion would result in substantial injustice and prejudice to plaintiff.

2. The ends of justice would be served by granting plaintiff's motion.

WHEREFORE, plaintiff respectfully moves the Court for the motion in this action in the manner and to the extent set forth in the plaintiff's response to dispositive motions to judge Colleen Kollar-Kotelly's Order November 19, 2007 and response to defendant's motion to dismiss.

Respectfully submitted,

*Leonard I. Howard*
LEONARD I. HOWARD, Pro Se
4810 7TH Street, NE
Washington, DC 20017


SWORN TO AND SUBSCRIBED
Before me this 19th day of December, 2007:

_____
Notary Public



Vivian L. Warner
NOTARY PUBLIC
Prince George's County, MD
My Commission Expires
March 1, 2011