UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEONARD I. HOWARD,

    Plaintiff,

     v.

VINCENT C. GRAY, Mayor for the District
of Columbia,

    Defendant.

Civil Action No. 07-1291 (CKK)

**MEMORANDUM OPINION**
(October 20, 2011)

     Plaintiff Leonard I. Howard, a former Financial Manager for the District of Columbia,

filed this action against Adrian M. Fenty in his official capacity as Mayor of the District of

Columbia.[1]  Plaintiff alleges he was denied a reasonable accommodation for his physical

disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et

seq.*, following an on the job injury.  Plaintiff further alleges discrimination in the form of

termination and preclusion from future employment on the basis of his disability, in violation of

the ADA and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*  Presently before the Court

is Defendant's [37] Motion for Summary Judgment.  The motion has been fully briefed by the

parties and is therefore ripe for determination.

     The Court has considered the parties' briefs, the accompanying exhibits, the record in

this case, and the relevant legal authorities.  The parties agree that Defendant is not liable for

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), the Court hereby substitutes the
current Mayor of the District of Columbia Vincent C. Gray as the proper named defendant in this
action.

failing to provide a reasonable accommodation prior to Plaintiff's request for accommodation in

January 2006, therefore the Court shall grant Defendant's motion as to the accommodation of

Plaintiff's disability between April 2004 and December 2005.  However, because there remain

genuine issues of material fact regarding whether Plaintiff was an "otherwise qualified

individual" in January 2006, the Court shall deny Defendant's motion as to Plaintiff's request for

accommodation in January 2006 and Plaintiff's termination and preclusion from further

employment.

## I. BACKGROUND

Plaintiff is a former Financial Manager in the Office of the Chief Financial Officer

("OCFO") for the District of Columbia.  Howard Aff. ¶ 3.[2]  In April 2004, Plaintiff was injured

when he fell while attempting to sit down in his chair at work.  Def.'s Ex. 3 (05/04/04 Ltr L.

Howard to N. Mayers); Howard Aff. ¶¶ 4-5.  Plaintiff initially reported pain and stiffness in his

shoulder, back, neck, chest, and numbness in his hands, impairing his ability to move.  Def.'s Ex.

3.  Plaintiff's treating physician, Dr. David L. Higgins, diagnosed Plaintiff with rotator cuff and

labrum tears in both shoulders, as well as lateral and medial meniscus tears in both knees, and

---

[2] The Court strictly adheres to the text of Local Civil Rule 7(h) (formerly Rule 56.1) when resolving motions for summary judgment.  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding that district courts must invoke the local rule before applying it to the case). The Court has advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." [2] Scheduling and Procedures Order at 5 (June 26, 2007).  Thus, where possible, the Court shall cite only to one party's Statement of Material Facts ("Stmt.") unless a statement is contradicted by the opposing party, in which case the Court may cite a party's Response to the Statement of Material Facts ("Resp. Stmt.").  Given the limited scope of the Statements filed by the parties in this case, the Court shall also cite directly to evidence in the record, or if undisputed and not otherwise evidenced, the parties' pleadings.

chondromalacia in both knees.  Def.'s Ex. 5a (6/30/04 Report of Physical Evaluation).  After the accident, Plaintiff did not return to work and utilized a combination of his annual and sick leave to cover his absence from work before being placed on Leave Without Pay ("LWOP") status. Def.'s Ex. 8 (5/24/04 Doctor's Note) at 2; Def.'s Ex. 16 (7/1/04 Ltr N. Mayers to G. James); Howard Aff. ¶ 7.  Mr. Howard also filed for disability retirement.  Def.'s Ex. 3.

After nearly six months on LWOP, Natalie Mayers, Chief Management Officer for the Office of Finance and Resource Management, sent a letter to Plaintiff asking him to complete the paperwork to receive benefits under the Family Medical Leave Act.  Def.'s Ex. 9 (9/27/04 Ltr N. Mayers to L. Howard).  Plaintiff did not to apply for FMLA benefits and remained on LWOP. Def.'s Ex. 7 (12/10/04 Ltr L. Howard to N. Mayers).  On December 6, 2004, Ms. Mayers once again wrote to Plaintiff, this time stating that Defendant considered his position abandoned because it had not received any medical documentation since June 2004, and Plaintiff reportedly was not pursuing his application for disability retirement.  Def.'s Ex. 10.  Plaintiff denied Ms. Mayer's allegations, and further indicated that "if the Agency can find a suitable position for me in light of my current physical disabilities and medical conditions," he would request medical clearance to return to work.  Def.'s Ex. 7.  There is no indication in the record that Defendant took any action in response to this letter.

Between the parties' December 2004 correspondence and December 2005, Dr. Higgins provided periodic "status forms" stating Plaintiff still required indefinite leave from work on account of his injuries.  Def.'s Exs. 5b (01/03/05 Status Form), 5c (09/19/05 Status Form). During this time period, Plaintiff filed for or continued to pursue his application for disability retirement.  Def.'s Exs. 5d (09/27/05 Ltr. D. Higgins to Office of Personnel Management), 7.

Dr. Higgins wrote to the Office of Personnel Management in support of Plaintiff's application for disability retirement, reiterating that Plaintiff had been totally disabled since 2004, "his symptoms have continued to progress," and "[e]ven though his job is considered sedentary Mr. Howard is unable to even perform light lifting or frequent use of the computer due to his shoulder impairments." Def.'s Ex. 5d. Ultimately Plaintiff's application for disability retirement was denied in November 2005. Howard Aff. ¶ 9; Pl.'s Ex. 4 (12/08/05 Email M. Winn to N. Mayers).

In late 2005, the OCFO sought to terminate Mr. Howard once a final determination was made on his application for disability retirement. Pl.'s Ex. 4. Nearly one month later, Morris Winn, the Human Resources Director for the OCFO sent Plaintiff a letter referencing the denial of Plaintiff's application and requesting additional medical records to support Plaintiff's disability status and ongoing leave without pay. Def.'s Ex. 11 (01/06/2006 Ltr. M. Winn to L. Howard). Plaintiff submitted a new status form from his treating physician indicating Plaintiff could return to work 20 hours per week so long as he was primarily sedentary and did not engage in any "repetitive motion." Howard Aff. ¶ 14; Def.'s Ex. 6 (01/20/06 Status Form and Report of Physical Examination); Pl.'s Ex. 6 (same). Plaintiff asserts he had several telephone conversations with Mr. Winn, and was under the impression Mr. Winn was attempting to locate a suitable position to accommodate Plaintiff's work limitations. Howard Aff. ¶¶ 12-15. The record is conflicted as to whether Mr. Winn and Mr. Howard had further contact regarding his request for accommodation prior to Mr. Howard's termination. *Cf. id.* ¶ 16 (claiming Mr. Winn did not return Mr. Howard's phone calls between January 2006 and March 2006) *with* Def.'s Ex. 14 (04/04/06 Charge of Discrimination) (alleging Plaintiff spoke with Mr. Winn in February

2006, and Mr. Winn stated there were no positions available that could accommodate Plaintiff's medical restrictions).

Relying on the letter submitted by Dr. Higgins in support of Plaintiff's disability retirement application in September 2005, Ms. Mayers requested "finalization of the previous request (made in December 2004) to terminate Mr. Leonard Howard." Def.'s Ex. 12 (02/6/06 Ltr. N. Mayers to M. Winn). On March 13, 2006, Defendant's Chief Financial Office Natwar M. Gandhi terminated Plaintiff, effective immediately. Def.'s Ex. 15 (Ltr of Termination); Pl.'s Ex. 7 (same). Plaintiff appealed his termination to Paul Lundquist, the Executive Director of the OCFO's Office of Management and Administration, and filed a Charge of Discrimination with the District of Columbia Office of Human Rights, asserting Plaintiff was capable of returning to work, but was never given the opportunity to do so. Def.'s Ex. 13 (04/11/04 Ltr L. Howard to P. Lundquist); Def.'s Ex.'s 14. Mr. Lundquist denied Plaintiff's appeal (Answer to Am. Compl. ¶ 21), and the Office of Human Rights issued a right to sue letter in April 2007 (Am. Compl. ¶ 7; Pl.'s Opp'n at 5).

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials); or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact as required by Rule 56(c), the court may . . .

consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). The moving

party bears the "initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, which it believes demonstrate the absence

of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal

quotation marks omitted). When considering a motion for summary judgment, the court may not

make credibility determinations or weigh the evidence; the evidence must be analyzed in the

light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If material facts are at issue, or,

though undisputed, are susceptible to divergent inferences, summary judgment is not available."

*Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by

the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal

quotation marks omitted). To be material, the factual assertion must be capable of affecting the

substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient

admissible evidence that a reasonable trier of fact could find for the non-moving party.

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-

52. The mere existence of a factual dispute is by itself insufficient to bar summary judgment.

*See Liberty Lobby*, 477 U.S. at 248.  Mere allegations or denials in the adverse party's pleadings

are insufficient to defeat an otherwise proper motion for summary judgment.  *Williams v.*

*Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply

"show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Conclusory assertions offered

without any factual basis for support do not satisfy an opponent's burden to set forth "affirmative

evidence" showing a genuine issue for trial.  *Laningham*, 813 F.2d at 1241.

### III.  DISCUSSION

In his Complaint, Howard asserts claims for failure to reasonably accommodate and

termination on the basis of his disability.  Specifically, Howard contends that his employer failed

to reasonably accommodate his request for "limited duty work status" with limitations on his

movement, and subsequently terminated and precluded him from further employment with the

Office of the Chief Financial Officer because of that disability.  Defendant does not deny that

Howard was disabled, but alleges that they were unable to accommodate the restrictions placed

on Howard by his physician, and terminated him when he was no longer able to return to work.

For the reasons stated below, there remains a genuine issue of material fact as to whether

Howard was able to work when he asked to return, and whether he could have performed the

essential functions of his position given his medical restrictions.

A.     *April 2004 to December 2005 Reasonable Accommodation*

The record (however sparse) provided by the parties indicates that, construed liberally,

Plaintiff requested accommodation for his disability on three different occasions: (1) June 15,

2004 in a fax from Plaintiff's wife Mrs. Deidran Howard indicating Mr. Howard needed

7

indefinite medical leave, and requesting use of his sick leave and annual leave (Def.'s Ex. 8); (2) December 10, 2004 in Plaintiff's letter to Ms. Mayers requesting "a suitable position for me in light of my current physical disabilities and medical conditions" (Def.'s Ex. 7); and (3) January 20, 2006 in Dr. Higgins' status form indicating Plaintiff could return to "light duty status" of 20 hours per weeks with no repetitive motion (Pl.'s Ex. 6; Def.'s Ex. 6). Defendant asserts, among other arguments, that it reasonably accommodated at least the first and second requests by placing Plaintiff on LWOP until his termination. Def.'s Mem. of P. & A. at 17-18. Plaintiff does not dispute the adequacy of the accommodation, arguing instead that his claims are based only on the January 2006 request for accommodation. Pl.'s Opp'n at 10 ("During the period of time that Plaintiff was on LWOP he was not seeking a reasonable accommodation that is relevant to the instant case. The relevant time period for determination of what duty the statutes would have imposed upon Defendant is the time period in early January, 2006 when Plaintiff sought a reasonable accommodation."). On the basis of the parties' agreement that the District is not liable for a failure to accommodate prior to January 2006, the Court grants Defendant's motion for summary judgment on Count I of the First Amended Complaint as to all conduct between April 7, 2004 and Plaintiff's request for accommodation in January 2006.

    B.    *January 2006 Request for Accommodation*

    Count I of the Amended Complaint alleges a failure to reasonably accommodate Plaintiff's disability in violation of the Americans With Disabilities Act. The ADA prohibits a number of forms of discrimination, including the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation

would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A).

To be an "otherwise qualified individual," Plaintiff must be able, with or without reasonable

accommodation, to perform "the essential functions of the employment position that such

individual holds or desires." 42 U.S.C. § 12111(8).  Defendant argues Mr. Howard was not an

"otherwise qualified individual" under the statute, and therefore the District had no obligation to

accommodate his disability because (1) Plaintiff previously applied for disability retirement on

the grounds he was totally disabled and unable to work; (2) Plaintiff could not perform the

"essential functions" of his job as a Financial Manager; and (3) Plaintiff has not identified any

available alternative positions within the OCFO for which he was qualified.  Each claim is

evaluated below, but none are sufficient to warrant summary judgment.

> 1.  Plaintiff's Application for Disability Retirement Did Not Render Him
>     Unqualified under the ADA

Defendant argues that Plaintiff cannot claim he was an "otherwise qualified individual"

and able to return to work (albeit with a reasonable accommodation) in January 2006 because he

had previously applied for disability retirement on the grounds he was unable to work.  Def.'s

Mem. of P. & A. at 11.  While initially styled as a legal estoppel type argument (see *id.*), in its

reply brief, the District instead claims that Plaintiff's disability retirement claim factually

precludes any genuine issue of material fact as to Mr. Howard's ability to work.  Def.'s Reply in

Support of Def.'s Mot. for Summ. J. at 3-6.  As a matter of law, Plaintiff's ultimately futile

application for disability retirement does not preclude him from asserting a claim for failure to

accommodate his disability, especially when the request for accommodation post-dated the

denial of his application.  Factually, Plaintiff has provided sufficient evidence to create a genuine

issue of material fact as to whether he recovered sufficiently after the denial of his retirement

application to return to work.

       a.      A futile application for disability retirement does not have a legally
preclusive effect on reasonable accommodation claims.

According to the Defendant, because Plaintiff's application for CSRS benefits
necessarily required Plaintiff to claim that he was "totally unable to work," Plaintiff should not
now be able to claim he was able to work with a reasonable accommodation.  Defendant relies
on two cases for this proposition: *Chinchillo v. Powell*, 236 F. Supp. 2d 18 (D.D.C. 2003) and
*Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184 (D.D.C. 2008).   Neither is persuasive in this case.
Initially, *Chinchillo* found, as an additional basis for granting summary judgment, that since the
plaintiff received disability retirement under the Federal Employee Retirement System at the
same time the alleged discrimination took place, plaintiff was not an "otherwise qualified
person" under the Rehabilitation Act.  236 F. Supp. 2d at 26-27.  It is not clear in *Chinchillo*
whether the court considered the award of benefits to factually establish that plaintiff's disability
could not reasonably be accommodated, or whether legally the plaintiff was barred from arguing
in her application that she could not be accommodated, and that her employer should have
accommodated her disability.  *Id.*  If the former, *Chinchillo* is irrelevant here because the Office
of Personnel Management found, in rejecting Plaintiff's application, that he was able to work.  If
the latter, any legal presumption was rejected by the Court of Appeals.  In *Solomon v. Vilsack*,
628 F.3d 555 (D.C. Cir. 2010), the D.C. Circuit Court of Appeals held that the receipt of FERS
disability benefits does not create even a rebuttable presumption against the recipient's disability
discrimination claim.  *Id.* at 565-67.

In *Holmes-Martin*, Judge Ricardo M. Urbina recognized that there is no controlling
precedent in this Circuit on the preclusive effect of CSRS disability retirement benefits on ADA

and Rehabilitation Act claims, and that other Circuits are divided on the issue. 569 F. Supp. 2d at 195-96. Judge Urbina concluded that a plaintiff's successful application for retirement benefits precluded a cause of action for a failure to reasonably accommodate during the same time frame. 569 F. Supp. 2d at 195-96. However, in *Holmes-Martin*, as in *Chinchillo*, the plaintiff was actually successful in her application for disability retirement. Judge Urbina specifically held that "*[o]btaining* CSRS disability benefits, therefore, precludes the plaintiff from bringing a Rehabilitation Act claim." *Id.* at 196 (emphasis added). Mr. Howard's application, by contrast, was ultimately denied. Howard Aff. ¶ 9. The Office of Personnel Management concluded that Plaintiff was *not* totally unable to work, a finding which is consistent with, not contrary to Plaintiff's request for accommodation. The Supreme Court has acknowledged that in the context of Social Security disability benefits, "if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the [ADA] claims is of the sort normally tolerated by our legal system." *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805 (1999).

The application for disability retirement is further irrelevant because Plaintiff has never sought to contradict the assertions made in his retirement application, but rather claims he recovered sufficiently after the application was prosecuted so as to be able to work. *See* Howard Aff. ¶ 11; Pl.'s Opp'n at 10. Defendant's disbelief of this claim notwithstanding, Defendant has not identified any legal precedent or equitable principle that precludes Plaintiff from asserting that after his application for disability retirement was denied, he recovered from his disability and was an "otherwise qualified individual" that could perform the essential functions of his position with a reasonable accommodation.

11

     b.     Plaintiff's claim for disability retirement does not foreclose the possibility he recovered sufficiently to return to work in January 2006.

In its reply brief, the District re-construes its argument regarding Plaintiff's retirement application as a factual basis for denying summary judgment: according to the District, because there is no evidence Plaintiff recovered from his injuries between September 2005 (Dr. Higgins' correspondence in support of Howard's retirement application) and his request for accommodation in January 2006, the Court should grant summary judgment on the basis Howard was not qualified at the time he made the request.  Defendant's reliance on *Chinchillo* for this position is misplaced.  Besides the ambiguity in the court's reasoning (*see supra*), in *Chinchillo*, the alleged failure to accommodate was contemporaneous with the plaintiff's successful application for disability retirement:

> [T]he fact that plaintiff applied for and received retirement benefits on grounds of disability *at the same time* that he alleged illegal discrimination based on the failure to provide a reasonable accommodation for his disability further demonstrates that plaintiff was unqualified to perform the essential functions of his job and that no reasonable accommodation was possible.

236 F.Supp.2d at 26 (emphasis added).  Here, Howard alleges a failure to accommodate his disability *after* the application for and denial of disability retirement.  Pl.'s Opp'n at 2, 11; Howard Aff. ¶¶ 9-10.  Plaintiff did not simultaneously request disability benefits and the reasonable accommodation at issue, so the factual claims in his application do not require a particular finding regarding Plaintiff's condition.  Since neither party deemed it useful to introduce Plaintiff's application into the record, the Court cannot grant summary judgment on the basis of speculation regarding factual claims in a document that is not before the Court.

Even if the Court assumes that Plaintiff's retirement application conclusively establishes

Plaintiff was unable to work between April 2004 and November 2005, Plaintiff has provided both his own affidavit regarding his physical condition (Howard Aff. ¶ 11) and the evaluation of his treating physician (Def.'s Ex. 6), both of which indicate Mr. Howard was physically able to return to work with certain limitations by the end of January 2006.  For its part, Defendant points to Plaintiff's medical records from April 2004 to September 2005 indicating Plaintiff's condition continued to worsen.  As of September 27, 2005, Dr. Higgins asserted Plaintiff was totally disabled.  Def.'s Ex. 5d.  The notes regarding Dr. Higgins' physical exam of Mr. Howard on January 18, 2006 note that Plaintiff's shoulders "[have] not changed," and that his left knee pain worsened with certain activities.  Def.'s Ex. 6.  On this basis, Defendant contends "any argument by counsel that the plaintiff was ready to return to work [in January 2006] cannot reasonably be believed."  Def.'s Reply at 3.

Though the January 20, 2006 report provided by Dr. Higgins is not the model of clarity, there is a genuine issue of material fact as to whether Plaintiff was totally disabled, or, as the status form explicitly states, Plaintiff was able to work with certain restrictions.  "As the party moving for summary judgment, [Defendant] bears the initial burden of identifying evidence that demonstrates the absence of any genuine issue of material fact."  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Here, Defendant "did not carry its burden because it offered no evidence to resolve the disputed material issue."  *Miller v. Hersman*, 594 F.3d 8, 12 (D.C. Cir. 2010).  The District failed to provide any reason why Dr. Higgins' statements that certain of Plaintiff's injuries worsened "with certain activities," or that Plaintiff's shoulders "in general" had not changed are entitled to more weight–much less dispositive weight–than Dr. Higgins' statement in the same document that Plaintiff was able to return to work.  This is particularly true

because nothing in the record indicates whether Plaintiff's condition had "not changed" since April 2004, his most recent visit, or some time in between. Defendant's reliance on Dr. Higgins' report merely reinforces the factual dispute in the record regarding Plaintiff's ability to work. Therefore summary judgment is not appropriate at this time.

> 2.   Plaintiff Established a Genuine Issue of Material Fact as to His Ability to Perform the Essential Functions of His Position

While the ADA and Rehabilitation Act require an employer to make reasonable accommodations for an employee's or applicant's disability, this requirement does not extend the "essential functions" of a particular position. *See* 42 U.S.C. § 12111(8). For Plaintiff, this means that if he was unable to perform the "essential functions" of his position with the OCFO without accommodation, he was not an "otherwise qualified individual," and the District was under no obligation to accommodate his disability. The District identifies two "essential functions" of the Financial Manager position Plaintiff was allegedly unable to perform: (1) sitting and working at a computer; and (2) traveling offsite to visit other agencies. Def.'s Mem. of P. & A. at 15. Because there remains a genuine issue of material fact as to whether Mr. Howard could work at a computer and whether site visits were an essential function of Mr. Howard's assignment, summary judgment on this basis shall be denied.

> a.   Plaintiff's ability to work at a computer remains in dispute.

Initially, the District asserts that because Dr. Higgins restricted Mr. Howard from engaging in "repetitive motion" while at work (Def.'s Ex. 6 at 1), Mr. Howard could not work on a computer, an essential function of his position. Mr. Howard does not dispute that computer work is an essential function of the Financial Manager position. Rather, Plaintiff argues that he was perfectly capable of sitting and typing at a computer, and the "repetitive motion" restriction

referred to his shoulders rather than his wrists.  The factual record on this issue is mixed.

Plaintiff early on reported feeling numbness in his hands (Def.'s Ex. 3), and Dr. Higgins'

September 2005 letter in support of Plaintiff's retirement application states he was unable to sit

at a computer and work due to his "shoulder impairments" (Def.'s Ex. 5d).  However, Plaintiff

affirms that he was able to type by the time he asked for an accommodation, and the January

2006 evaluation from Dr. Higgins states he can return to work.  Def.'s Ex. 6.

Neither party has any direct evidence from Dr. Higgins.  Rather, Defendant relies on the

Eighth Circuit case *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011 (8th

Cir. 2000) for the notion that repetitive motion must mean typing.  Def.'s Mem. of P. & A. at 15.

In *Cravens*, the treating physician actually specified "keying" as one type of repetitive motion

the plaintiff should not engage in.  214 F.3d at 1014.  This is far from conclusive evidence that

Dr. Higgins likewise meant to preclude Mr. Howard from typing.  While the parties are not

disputing Defendant's claim that "[t]yping and working on a computer is clearly a repetitive

motion for which individuals can develop carpal tunnel syndrome," (Def.'s Mem. of P. & A. at

15), that point is irrelevant.  Carpal tunnel syndrome was not part of the disability that kept Mr.

Howard from returning to work, and typing is certainly not the *only* repetitive motion one might

engage in within an office setting.  Dr. Higgins previously associated Howard's inability to work

at a computer with Howard's shoulder injuries, not his hands.  Def.'s Ex. 5d.  Moreover, Dr.

Higgins was aware that Plaintiff's position was primarily sedentary and required a significant

degree of computer work.  *See id.*  It would be illogical for Dr. Higgins to clear Plaintiff to return

to work, yet restrict him from performing what Dr. Higgins knew was Plaintiff's primary

activity.  Though far from clear, Plaintiff has provided enough support in the record to show a

genuine issue of material fact as to the meaning of "repetitive motion" and his ability to work at a computer to avoid summary judgment.

                      b.       Offsite travel was not an essential function of Plaintiff's position.

In passing, the District also argues that Plaintiff could not travel to offsite agencies, purportedly an essential function of the Financial Manager position.  In determining whether a particular function is "essential," Courts look to a number of factors, including, among others, (1) the employer's judgment; (2) the written job description; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring performance of that function; and (5) the work experience of past incumbents in that job.  29 C.F.R. § 1630.2(n)(3).  Given this framework, the District has not met its initial burden of showing offsite visits were an essential function of Plaintiff's position.  Though the District asserts that offsite visits were essential, the job description refers to such visits as "occasional" and "as needed."  Pl.'s Ex. 1; Def.'s Ex. 1. At the time Mr. Howard became disabled, he spent no time travelling to offsite agencies.  Def.'s Ex. 2 (03/29/10 Howard Dep.) at 21:6-22:7; Pl.'s Excerpts of Howard Dep. at 31:1-32:18.  There would be no consequences to Mr. Howard not being able to leave the building because he had no offsite duties or agencies to monitor.  *See* Pl.'s Excerpts of Howard Dep. at 31:1-32:18*.*  Mr. Howard's prior experience in the Financial Manager position indicates that travel to offsite locations was not an essential function of his position, and his inability to travel did not make him unqualified for the position for purposes of the ADA and Rehabilitation Act.

                    3.      <u>Plaintiff Did Not Need to Identify an Available Alternative Position for which He was Qualified</u>

Defendant's final argument regarding Plaintiff's status as an "otherwise qualified individual," is that Plaintiff had the burden and failed to identify an available alternative position

within the OCFO for which he was qualified.  Def.'s Mem. of P. & A. at 15-16.  Plaintiff

contends this argument is irrelevant because he sought an accommodation to return to his prior

position, which remained open, not a new position within the OCFO.  Pl.'s Opp'n at 15-16.

Plaintiff is correct.  Because Plaintiff sought to return to his prior position, only with shorter

hours and no movement between floors, Plaintiff was not under any obligation–at that time or in

opposition to a motion for summary judgement–to identify alternative positions available within

OCFO for which he was qualified.  29 C.F.R. App. § 1630.2(o) ("[R]eassignment should be

considered only when accommodation within the individual's current position would pose an

undue hardship."); *Aka v. Washington Hosp. Center*, 156 F.3d 1284, 1301 (D.C. Cir. 1998).

That obligation would only be triggered by the District asserting that accommodating Plaintiff in

his then-current position would cause an undue hardship.  While the District claimed Plaintiff

could not perform the essential functions of his position, nothing in the record indicates it

notified Plaintiff of such, or in its pleadings has it alleged an undue hardship that would require

Plaintiff to identify alternative positions.  *See infra*, at Part III.C.  A reasonable juror could

conclude that Howard could have returned to his position for limited hours with no movement

between floors, obviating the need to accommodate Mr. Howard by providing him a different

position within the OCFO.

     C.     *Termination and Preclusion from Further Employment*

Count II of the Amended Complaint alleges discrimination in the form of termination and

preclusion from further employment with the OCFO in violation of the ADA and the

Rehabilitation Act.  The ADA prohibits discrimination in the form of "denying employment

opportunities to a job applicant or employee who is an otherwise qualified individual with a

disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B). The Rehabilitation Act incorporates the ADA standard by reference. 29 U.S.C. § 794(d) ("The standards used to determine whether [The Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [the provisions of] the Americans with Disabilities Act."). The District argues summary judgment is warranted on Count II of the Amended Complaint because (1) Plaintiff was not an "otherwise qualified individual"; (2) accommodating Plaintiff's disability would cause an undue hardship; and (3) Plaintiff has failed to show his disability was the "but-for" cause of his termination.

The District's initial argument is the same as its argument for Count I, and likewise lacks merit. For the first time in its reply brief, Defendant argues that accommodating Plaintiff would have been "unreasonable" and thus termination was permissible. Upon closer inspection, Defendant's argument is essentially that Plaintiff was still totally disabled and thus could not have been accommodated except with continued leave without pay. *See* Def.'s Reply at 3-6. Plaintiff does not argue that he should have been granted further leave without pay, but rather that he was capable of performing his job with reasonable modifications. Defendant does not explain why Plaintiff would have been unable to perform the essential functions of his position, setting aside the issue of computer use, which remains in dispute. Rather, Defendant conclusorily alleges that the 20 hour work week "complicat[ed] his placement in a position," and that there was "no position at the OCFO which would accommodate the [P]laintiff's medical restrictions." Def.'s Reply at 4-5. Defendant's own employees, however, testified to the

18

contrary.  *See* Pl.'s Excerpts of N. Mayers Dep. at 80:16-81:12 (indicating that the "budget"

season may be intense, but he might have been able to do the work on a light duty status); Pl.'s

Excerpts of M. Mohamed Dep. at 72:3-73:1 (noting Mr. Howard was previously on part time

status due to an on the job injury and performed well).  A reasonable juror could conclude on the

basis of the factual record that Howard could perform the essential functions of his position by

remaining in his chair, having information brought to him, and working on a part-time basis.

There is no evidence from the District that this accommodation would be unreasonable or cause

an undue hardship.

Defendant's final argument is unclear, but seems to allege Plaintiff was not terminated in

lieu of accommodating his disability, but rather was terminated because he was medically unable

to work and the District was not willing to continue Plaintiff's leave without pay.  This is

entirely duplicative of Defendant's prior contentions regarding Plaintiff's recovery, which as

previously held, is still in dispute.  *See supra*, at III.B.1.ii.  In any event, this argument is

irrelevant.  Assuming, without deciding, that the "but for" causation requirement Defendant

proposes is the governing standard, if Plaintiff was physically unable to work in January 2006,

he was not an "otherwise qualified person," under either statute and thus cannot state a claim for

failure to accommodate or unlawful termination.  *See* 42 U.S.C. § 12112(b)(5)(B); 29 U.S.C. §

794(d).  If Plaintiff was physically able to perform his duties with accommodation when the

reasonable accommodation was requested, by Defendant's own admission the only reason he did

not return to work was that the limitations associated with his disability were not accommodated.

Thus, Defendant's final argument cannot form the basis for summary judgment as it is dependent

on outstanding material disputes.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that the parties agree Defendant is not liable for failing to accommodate Plaintiff's disability between the date of injury and December 2005. Therefore Defendant's motion for summary judgment is GRANTED as to Count I for all conduct between April 7, 2004 and December 2005.  However, there remains a genuine issue of material fact as to whether Plaintiff was an "otherwise qualified individual" capable of performing the essential functions of his position in January 2006, including whether Plaintiff was restricted from typing and working at a computer as part of his medical restrictions.  Accordingly, Defendant's Motion for Summary Judgment as to the January 2006 request for accommodation under Count I and the totality of Count II is DENIED. An appropriate Order accompanies this Memorandum Opinion.


Date:   October 20, 2011


                    _____/s/_____
                    **COLLEEN KOLLAR-KOTELLY**
                    UNITED STATES DISTRICT JUDGE